UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

YANDIELLE SMITH and TIFFANY MCKELVY,

                               Plaintiffs,

-against-

E. GARCIA, J. HINES, and JOHN/JANE DOE # 1 - 25,

                               Defendants.
-------------------------------------------------------------------------x

COMPLAINT

21 CV 578

**JURY TRIAL DEMANDED**

Plaintiffs, by their attorneys, Law Office of Gregory P. Mouton, Jr., LLC, respectfully allege:

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Plaintiffs' rights under the Constitution of the United States pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

2. As set forth more fully herein, Plaintiffs Yandielle Smith and Tiffany McKelvy were protesting deplorable conditions at the Metropolitan Detention Center Brooklyn on February 3, 2019. The protest was organized after inmates were denied basic services, including heat, hot food, medical services, and prescription drugs, during a polar vortex that resulted in single-digit temperatures in New York.

3. Although the protesters, including Ms. Smith and Ms. McKelvy, were all peacefully protesting, the individual defendants employed excessive force tactics against them, including physically assaulting them and using law enforcement-only pepper spray that had a Scoville Heat Unit rating of 2,000,000.

4. The assault left Ms. Smith, among other things, with injuries to her right arm, elbow, and shoulder, as well as an inability to breathe and burning eyes.

5. In addition to Ms. McKelvy suffering from the effects of pepper spray, she also suffered, among other things, several fractures to her right hand as a result of the individual defendants forcing her to the ground during the assault.

## JURISDICTION AND VENUE

6. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, as well as *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

7. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

9. Plaintiffs demand a trial by jury in this action.

## PARTIES

10. Plaintiff Yandielle Smith is a resident of the State of Georgia.

11. Plaintiff Tiffany McKelvy is a resident of the State of New York.

12. The Federal Bureau of Prisons ("BOP") is a United States federal law enforcement agency under the Department of Justice responsible for the care, custody, and control of incarcerated individuals. BOP operates correctional and administrative facilities, including Metropolitan Detention Center, Brooklyn ("MDC Brooklyn").

13. At all times relevant herein, Defendant E. Garcia worked at MDC as a supervisor, correctional officer, employee, and/or agent of the United States of America ("USA") and BOP.

14. At all times relevant herein, Defendant E. Garcia was acting within the scope of his employment with USA and BOP.

15. At all times relevant herein, Defendant E. Garcia was acting under color of federal law.

16. At all times relevant herein, Defendant J. Hines worked at MDC as a supervisor, correctional officer, employee, and/or agent of the United States of America ("USA") and BOP.

17. At all times relevant herein, Defendant J. Hines was acting within the scope of his employment with USA and BOP.

18. At all times relevant herein, Defendant J. Hines was acting under color of federal law.

19. At all times relevant herein, Defendants John/Jane Doe # 1 - 25 worked at MDC as supervisors, correctional officers, employees, and/or agents with USA and BOP.

20. At all times relevant herein, Defendants John/Jane Doe # 1 - 25 were acting within the scope of their employment with USA and BOP.

21. At all times relevant herein, Defendants John/Jane Doe # 1 - 25 were acting under color of federal law.

22. The names John/Jane Doe # 1 - 25 are fictitious, their true names being unknown to Plaintiffs at this time.

23. Defendants are sued in their individual capacities.

24. Defendants were direct participants in the wrongful acts and omissions alleged herein.

25. At all times alleged herein, Defendants knowingly participated in, acquiesced to, contributed to, encouraged, authorized (either expressly or implicitly), approved, and/or were deliberately indifferent to the wrongful acts and omissions alleged herein.

## STATEMENT OF FACTS

26. Per the Department of Justice,

> MDC Brooklyn is the largest federal Metropolitan Detention Center in the country and houses approximately 1,700 male inmates in its West Building and approximately 40 female inmates in its East Building. When the Special Housing Unit (SHU) in the West Building is at capacity, MDC will house additional male SHU inmates in the East Building. The institution's mission is to house federal inmates from the New York City metropolitan area who are processing through the federal judicial system. As an administrative security facility, MDC Brooklyn houses inmates at all security levels, sometimes including high-profile inmates with a variety of criminal histories, including terrorism, organized crime, and drug smuggling. Generally, MDC Brooklyn houses inmates on a short-term basis, averaging 120 to 180 days. After inmates are convicted and sentenced, the BOP assigns them to one of its long-term correctional facilities. MDC Brooklyn's West Building houses male inmates in 18 housing units on 6 floors. The two units on the top floor are SHUs, which house inmates who are either on administrative detention or in disciplinary segregation. The East Building houses female inmates in one housing unit on one floor, and, as stated above, also houses male inmates in one additional SHU on another floor. The two buildings are connected by an underground tunnel, which MDC Brooklyn staff call "the link."

27. Around Martin Luther King, Jr.'s birthday that year, temperatures plummeted into the single digits causing the West Building to feel like a freezer. Inmates reported warming themselves by heating cans of water with contraband lighters and passing them around. "Anthony

Sanon, the head of the local chapter of the correction officers union, described workers in coats and gloves trying to keep order in the cold," describing the situation as "unbearable."[1]

28. In late January 2019, a severe cold wave caused by a weakened jet stream around the Arctic polar vortex hit New York and other parts of the USA and Canada, killing at least 22 people. The cold wave came after a winter storm dumped up to thirteen inches of snow in some regions from January 27 – 29, resulting in some of the coldest temperatures in over 20 years in the affected areas.

29. On January 27, 2019, an electrical panel that supplied power to MDC Brooklyn's West Building exploded.

30. The approximately 1,700 inmates in West Building were placed on lockdown,[2] unable to leave their cells for up to 23 hours a day. Inmates were refused social and legal visits.[3] Inmates began calling lawyers, reporting freezing conditions at MDC Brooklyn and the denial of basic services such as medical care and prescription medication.

31. Union officials reported that MDC Brooklyn's warden failed to set up an emergency command center or give staff instructions other than to keep inmates on lockdown.[4] Simple measures such as providing extra blankets to inmates were ignored.[5]

---

[1] Annie Correal and Joseph Goldstein, *'It's Cold as Hell': Inside a Brooklyn Jail's Weeklong Collapse*, N.Y. TIMES, Feb. 9, 2019, https://www.nytimes.com/2019/02/09/nyregion/brooklyn-jail-no-heat-inmates.html.
[2] Amy B. Wang, *Protesters swarm Brooklyn jail that endured polar vortex with no heat*, WASH. POST, Feb. 3, 2019, https://www.washingtonpost.com/nation/2019/02/03/protesters-swarm-dark-freezing-brooklyn-jail-that-endured-polar-vortex-with-no-heat/.
[3] Craig McCarthy, *Feds confirm heating problems, no backup plan, at Brooklyn detention center*, N.Y. POST, Sept. 26 2019, https://nypost.com/2019/09/26/feds-confirm-heating-problems-no-backup-plan-at-brooklyn-detention-center/.
[4] Correal, *supra* note 1.
[5] *Id.*

32. Deirdre von Dornum, the Attorney-in-Charge of the Federal Defenders for the Eastern District of New York, obtained a court order to enter the detention center after requests for action to MDC Brooklyn's warden received dismissive replies. She found the building West Building lit by dim emergency lights, cells in pitch-black darkness, and the rancid smell of non-working toilets pervading the building.[6]

33. Ms. von Dornum observed that the common areas of the prison, areas inmates were being prevented from entering, had bearable temperatures. However, when she approached some of the cells, she was hit by gusts of cold air, and observed inmates wrapped in everything they had. Inmates complained about the freezing cold; no hot meals; no lights; brackish water that ran from the taps; and being denied medical care and prescription medication.[7][8]

34. Lawmakers also toured MDC Brooklyn, calling the conditions unacceptable and accusing officials of not understanding the situation's urgency.

35. Rep. Nydia M. Velázquez tweeted, "After visiting MDC again today it is clear the officials there have disregarded the basic human rights of inmates."[9]

36. Rep. Jerrold Nadler toured the jail before tweeting that officials at MDC Brooklyn "have been callously placing the health & safety of inmates at [MDC Brooklyn] at risk."[10]

37. The reports from inmates, lawmakers, and attorneys rallied protesters who began gathering outside of MDC Brooklyn to protest the inhumane conditions in which inmates were left to suffer.

---

[6] *Id.*
[7] *Id.*
[8] Wang, *supra* note 2.
[9] *Id.*
[10] *Id.*

38. One such protest was held on February 3, 2019. Ms. Smith and Ms. McKelvy were both present that day, rallying with other protesters in a bid to stop the injustices that were occurring at MDC Brooklyn. These protesters, including Ms. Smith and Ms. McKelvy, sought to shine a spotlight on what was happening at MDC Brooklyn, obtain answers from federal officials, and spur immediate results in the inmates' conditions at MDC Brooklyn.

39. A mother of one of the inmates being held in MDC Brooklyn began speaking to her son through a loudspeaker. From behind the barred windows, he yelled down to her that he loved her, and she told him that she was there for him. She asked if he had heat, to which he replied no.

40. The mother, determined to get answers for her son, peacefully entered the lobby of MDC Brooklyn to speak with corrections officials and officers inside the building. She was accompanied by other protesters, including Ms. Smith and Ms. McKelvy, as well as numerous members of the media.

41. As questions were being asked of officials inside of MDC Brooklyn's lobby, other corrections officers, including Defendants E. Garcia, J. Hines, and John/Jane Doe # 1 – 25, entered the lobby. The corrections officers inside the lobby began attacking the protesters, who were not being violent, causing any property destruction, or attempting to enter the secured portions of the detention center in any way.

42. Without warning, Defendants attacked Ms. Smith and McKelvy, striking, pushing, shoving, and deploying law-enforcement grade pepper spray on the protesting civilians.

43. Defendants struck and pepper-sprayed Ms. Smith, causing her pain, swelling, and bruising to her right arm and elbow. The pepper spray caused Ms. Smith, among other things, difficulty breathing, burning eyes, burning skin, coughing, wheezing, shortness of breath, inability

to breathe properly, burning throat, chest pain, gagging, runny nose, panic, difficulty speaking, emotional distress, blurred vision, and watery eyes. A pepper spray can was also thrown at her, and she was thrown to the ground by the Defendants causing her to sustain a strain to her right shoulder.

44. Ms. McKelvy was also assaulted, battered, and thrown to the ground, causing her to suffer multiple fractures to her right hand, as well as pain to her right shoulder, wrist, and knee. Ms. McKelvy's eyes and lungs also were affected by the pepper spray, and she experienced burning eyes, burning skin, coughing, shortness of breath, and panic as a result.

45. The attack caused both Ms. Smith and Ms. McKelvy to suffer mental anguish, fear, anxiety, embarrassment, and humiliation.

46. One of the cans recovered from the attack was a "SABRE Red" formulation. SABRE – Security Equipment Corp. advertises that

> [t]he one correct indicator of pepper spray potency, as recognized by the EPA & US Federal Government, is ***Major Capsaicinoids (MC)***. MC represents the strength of the entire formulation within your pepper spray. Typical sprays range from 0.18 to 1.33% MC. The higher the MC of the pepper spray the greater the potency. Sprays with higher MC are more effective as well. A good example, Gasoline, is typically 87, 89 or 91 Octane. The higher gasoline's octane rating, the greater the fuels performance. Proof, another example, is the measure of liquor strength. The higher the proof, the stronger the liquor.[11]

47. The "SABRE Red" pepper spray was no typical spray, containing an even higher level of Major Capsaicinoids at 1.38% and a Scoville Heat Unit rating of 2,000,000.

---

[11] SABRE – Security Equipment Corp., *Pepper Spray Strength: How Hot Is It Really?*, Dec. 6, 2011, https://www.sabrered.com/blog/pepper-spray-strength-how-hot-it-really.

48. The Second Circuit has recognized that the use of pepper spray in such circumstances constitutes excessive force, stating "[u]nquestionably, infliction of pepper spray on a[ person] has a variety of incapacitating and painful effects, and, as such, its use constitutes a significant degree of force. Accordingly, a number of our sister circuits have made clear that it should not be used lightly or gratuitously against a[ person] who is complying with police commands or otherwise poses no immediate threat to [an] officer." *Tracy v. Freshwater*, 623 F.3d 90, 98-99 (2d Cir. 2010) (citations omitted). These effects "include (1) dilation of the capillaries and instant closing of the eyes through swelling of the eyelids, (2) immediate respiratory inflammation, including uncontrollable coughing, retching, shortness of breath and gasping for air with a gagging sensation in the throat, and (3) immediate burning sensations to the mucous membranes, skin and inside the nose and mouth." *Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2011).

49. Following their attack on Ms. Smith and Ms. McKelvy, Defendants neither offered nor provided any medical assistance, nor did Defendants request any on Plaintiffs' behalf.

50. Defendants' use of force was excessive, abusive, and grossly disproportionate.

51. Defendants lacked any form of justifiable reason to use such force against Plaintiffs as Plaintiffs did not pose a danger to the life of any defendant nor others, and they were not a danger to cause serious physical injury to any person.

52. Each of the defendants was personally involved in the wrongful acts and omissions herein, including failing to timely intervene to prevent or stop the attack and failing to provide or seek adequate medical attention for Plaintiffs.

53. Defendants were deliberately indifferent to Plaintiffs' health, safety, and well-being.

54. As alleged herein, Defendants deprived Ms. Smith and Ms. McKelvy of adequate medical attention; inflicted cruel and unusual punishment including excessive force; and subjected Ms. Smith and Ms. McKelvy to unnecessary and wanton infliction of pain.

55. As alleged herein, Defendants were deliberately indifferent to and did deprive Ms. Smith and Ms. McKelvy of rights, privileges, and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

56. Defendants' conduct alleged herein was, *inter alia*, criminally reckless, grossly incompetent, disproportionate, excessive, intolerable to fundamental fairness, a violation of Ms. Smith's constitutional rights, and a violation of Ms. McKelvy's constitutional rights.

57. Because Defendants were acting under color of federal authority when they violated Plaintiffs' constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
February 3, 2021

By: /s/
Gregory Paul Mouton Jr., Esq.
Law Office of Gregory P. Mouton, Jr., LLC
*Attorneys for Plaintiffs*
1441 Broadway, 6th Floor
New York, NY 10018
Phone & Fax: (646) 706-7481

21 CV 578

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YANDIELLE SMITH and TIFFANY MCKELVY,

Plaintiffs,

-against-

E. GARCIA, J. HINES, and JOHN/JANE DOE # 1 - 25,

Defendants.

COMPLAINT

LAW OFFICE OF GREGORY P. MOUTON, JR., LLC

1441 Broadway, 6th Floor
New York, NY  10018
Phone & Fax: (646) 706-7481