UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

YANDIELLE SMITH and TIFFANY MCKELVY,

                              Plaintiffs,

       -against-

E. GARCIA, J. HINES, and JOHN/JANE DOE #1-25,

                             Defendants.

-----------------------------------------------------------------X

Civil Action No.
21-CV-578

(Garaufis, J.)
(Reyes, M.J.)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT**


BREON PEACE
United States Attorney
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201


MATTHEW J. MODAFFERI
Assistant United States Attorney
(Of Counsel)

**<u>Table of Contents</u>**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF THE CASE...................................................................................................2

      A.  Procedural History ............................................................................................2

      B.  Factual Allegations............................................................................................2

STANDARD OF REVIEW .......................................................................................................2

      A.  Standard under Fed. R. Civ. P. 12(b)(6) ..........................................................2

      B.  Standard under Fed. R. Civ. P. 12(d) and 56 ..................................................3

ARGUMENT ............................................................................................................................4

I.       PLAINTIFFS' CLAIM CONSTITUTES AN
        IMPROPER EXTENSION OF *BIVENS*.........................................................................4

      A.  Plaintiffs' claim presents a new context ........................................................6

      B.  Special factors counsel against extending *Bivens*
          and the FTCA is an alternative, existing potential
          means of relief.................................................................................................11

II.     TO THE EXTENT THAT THE COURT EXTENDS
        THE *BIVENS* REMEDY, DEFENDANTS ARE
        ENTITLED TO QUALIFIED IMMUNITY....................................................................17

CONCLUSION........................................................................................................................19

## <u>Table of Authorities</u>

Page(s)

<u>Cases</u>

*Abdoulaye v. Cimaglia*,
   15-cv-4921 (PKC),
   2018 U.S. Dist. LEXIS 56167 (S.D.N.Y. Mar. 30, 2018) .................................................. 11, 13

*Akande v. Phillips*,
   1:17-CV-01243 EAW,
   2019 U.S. Dist. LEXIS 108772 (W.D.N.Y. Jun. 29, 2019) ................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................................. 5

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ................................................................................................................ 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 3

*Benzman v. Whitman*,
   523 F.3d 119 (2d Cir. 2008) ..................................................................................................... 4

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) .......................................................................................................... 5, 7, 8

*Brosseau v. Haugen*,
   543 U.S. 194 (2004) ................................................................................................................ 17

*Cantú v. Moody*,
   933 F.3d 414 (5th Cir. 2019) ............................................................................................... 9, 15

*Carione v. United States*,
   368 F. Supp. 2d 186 (E.D.N.Y. 2005) ...................................................................................... 3

*Carlson v. Green*,
   446 U.S. 14 (1980) .................................................................................................................... 5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................................. 4

*Cleveland v. Caplaw Enters.*,
    448 F.3d 518 (2d Cir. 2006).................................................................... 3-4

*Davis v. Passman*,
    442 U.S. 228 (1979)........................................................................... 5

*Doe v. Hagenback*,
    870 F.3d 36 (2d Cir. 2017)................................................................... 6

*Dotson v. Griesa*,
    398 F.3d 156 (2d Cir. 2005)................................................................. 15

*Edwards v. Gizzi*,
    20-CV-7371 (KMK),
    2022 U.S. Dist. LEXIS 20100 (S.D.N.Y. Feb. 2, 2022)........................... 7, 10, 12, 15

*Fonte v. Bd. of Managers of Continental Towers Condominium*,
    848 F.2d 24, 25 (2d Cir. 1988)............................................................. 3

*Gonzalez v. Hasty*,
    269 F. Supp. 3d 45 (E.D.N.Y. 2017) ..................................................... 5, 6

*Gonzalez v. Velez*,
    864 F.3d 45 (1st Cir. 2017) .................................................................. 6

*Heicklen v. Toala*,
    No. 08-CV-2457 (JGK), 2010 U.S. Dist. LEXIS 14344 (S.D.N.Y. Feb. 18, 2010),
    *aff'd sub nom. Heicklen v. Kelly*, 409 F. App'x 457 (2d Cir. 2011)........................ 19

*Hernandez v. Mesa*,
    589 U.S. _, 140 S. Ct. 735 (2020).................................................... 6, 8, 14

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir. 2007).................................................................. 3

*Jones v. Treubig*,
    963 F.3d 214 (2d Cir. 2020)................................................................. 18

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018)..................................................................... 17, 18

*Leytman v. United States Dep't of Homeland Sec. Transp. Sec. Admin.*,
    804 F. App'x 78 (2d Cir. 2020) ............................................................ 14

*Martinez v. D'Agata*,
   No. 16-CV-44,
   2019 U.S. Dist. LEXIS 218107 (S.D.N.Y. Dec. 16, 2019) .................................................. 7, 8

*Mediavilla v. City of New York*,
   259 F. Supp. 3d 82 (S.D.N.Y. 2016) ................................................................................. 19

*Millbrook v. United States*,
   569 U.S. 50 (2013) ............................................................................................................. 14

*Morgan v. Shivers*,
   14-cv-7921 (GHW),
   2018 U.S. Dist. LEXIS 14235 (S.D.N.Y. Jan. 29, 2018) ............................................. 11, 13

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ............................................................................................................... 17

*Ojo v. United States*,
   364 F. Supp. 3d 163 (E.D.N.Y. 2019) ............................................................................... 12

*Ojo v. United States*,
   16 CV 4112 (MKB) (LB),
   2019 U.S. Dist. LEXIS 139302 (E.D.N.Y. Aug. 15, 2019) ................................................ 11

*Oliva v. Nivar*,
   973 F.3d 438 (5th Cir. 2020) .......................................................................... 7, 13, 14, 15

*Oliveras v. U.S. Dep't of Homeland Sec. Investigations Special Response Team Officer Robert
   Basile*,
   440 F. Supp. 3d 365 (S.D.N.Y. 2020) ...................................................................... 10, 13, 15

*Oneil v. Rodriguez*,
   18-CV-3287 (AMD)(LB),
   2020 U.S. Dist. LEXIS 181275 (E.D.N.Y. Sept. 30, 2020) ................................................ 11

*Orsay v. U.S. Dept. of Justice*,
   289 F.3d 1125 (9th Cir. 2002) ........................................................................................... 14

*Plumhoff v. Rickard*,
   572 U.S. 765 (2014) ...................................................................................................... 17, 19

*Ramirez v. Tatum*,
   17 Civ. 7801 (LGS),
   2018 U.S. Dist. LEXIS 214034 (S.D.N.Y. Dec. 19, 2018) ............................................. 11, 13

*Rivera v. Samilo*,
370 F. Supp. 3d 362 (E.D.N.Y. 2019) ................................................................. 8, 13, 14, 15

*Sanford v. Bruno*,
17-cv-5132 (BMC),
2018 U.S. Dist. LEXIS 80897 (E.D.N.Y. May 14, 2018) ........................................................ 5

*Scott v. Harris*,
550 U.S. 372 (2007)................................................................................................. 19

*Scott v. Quay*,
19-CV-1075 (ERK) (SMG),
2020 U.S. Dist. LEXIS 216990 (E.D.N.Y. Nov. 16, 2020)................................................ 12, 16

*Scotto v. Almenas*,
143 F.3d 105 (2d Cir. 1998) ............................................................................................. 4

*Sosa v. Bustos*,
17 Civ. 417 (ER),
2020 U.S. Dist. LEXIS 71362 (S.D.N.Y. Apr. 22, 2020)................................................... 8, 10

*Style v. Mackey*,
No. 17-CV-1691 (ENV),
2020 U.S. Dist. LEXIS 101989 (E.D.N.Y. June 8, 2020) ................................... 7, 8, 10, 13, 15

*Tracy v. Freshwater*,
623 F.3d 90 (2d Cir. 2010) ............................................................................................. 18

*Turkman v. Ashcroft*,
02-CV-2307 (DLI) (SMG),
2018 U.S. Dist. LEXIS 137492 (E.D.N.Y. Aug. 13, 2018)........................................... 12, 13, 14

*Turner v. Safley*,
482 U.S. 78 (1987)................................................................................................... 16

*White v. Pauly*,
137 S. Ct. 548 (2017)................................................................................................ 17

*Wiley v. Fernandez*,
9:19-CV-652,
2021 U.S. Dist. LEXIS 226803 (N.D.N.Y. 2021) ............................................................. 10

*Wilkie v. Robbins*,
551 U.S. 537 (2007)............................................................................................... 5, 12

*Wood v. Moss*,
    134 S. Ct. 2056 (2014) ................................................................................................ 19

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ........................................................................................ passim


Statutes

18 U.S.C. § 3050 ................................................................................................................ 9
18 U.S.C. § 3621 ......................................................................................................... 9, 16
18 U.S.C. § 4001(b) .................................................................................................... 9, 16
18 U.S.C. § 4042(a) .................................................................................................... 9, 16


Rules

Fed. R. Civ. P. 8(a)(2) ....................................................................................................... 3
Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 2
Fed. R. Civ. P. 12(d) ......................................................................................................... 3
Fed. R. Civ. P. 56(a) ......................................................................................................... 4
Fed. R. Civ. P. 56(c)(1) ..................................................................................................... 4

## PRELIMINARY STATEMENT

Defendants Eleazar Garcia and Robert Hines ("Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.

Plaintiffs Yandielle Smith and Tiffany McKelvy ("Plaintiffs") filed this action pursuant to *Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388 (1971) ("*Bivens*") alleging that they were subjected to excessive force inside the lobby of the Metropolitan Detention Center ("MDC") on February 3, 2019.  *See* Exhibit A (Compl.) ¶¶ 2, 3; *see also* Letter, Dkt. Entry No. 5 at 1 (noting Plaintiffs' claim is for excessive force).  Specifically, they allege that correctional officers used excessive force against private citizens who entered a jail that was closed to the general public to protest and demand answers about the conditions of the jail.  The Supreme Court has never recognized such a claim under a *Bivens* theory and under more recent Supreme Court precedent, Plaintiffs' claim seeks an unwarranted extension of the judicially disfavored *Bivens* remedy.  Assuming, *arguendo*, that the Court finds that the claim is proper under *Bivens*, Defendants are entitled to qualified immunity.  On this record, the events at issue are clear – protesters in 2019 stormed a closed correctional facility, occupied its lobby, and attempted to breach that lobby.  However, at that time (and to this day) there was no Second Circuit precedent conclusively establishing that a correctional officer's use of pepper spray and minimal force to disperse the protesters, clear the lobby and maintain facility security was unconstitutional, thus entitling Defendants to qualified immunity.

Accordingly, Defendants respectfully request that the Court dismiss this matter with prejudice.

## STATEMENT OF THE CASE

### A.        Procedural History

On February 3, 2021, Plaintiffs commenced the instant action against Eleazar Garcia and Robert Hines in their individual capacities pursuant to *Bivens*.  *See* Exhibit A; Dkt. Entry No. 1. On July 22, 2021, Defendants filed an application for a pre-motion conference with respect to their anticipated motion to dismiss.  *See* Dkt. Entry No. 9.  On January 7, 2022, the Court held a pre-motion conference and set a briefing schedule for submission of the motion.  *See* Dkt. Entry dated January 7, 2022.

### B.  Factual Allegations[1]

On January 27, 2019, an electrical panel within the MDC exploded causing a fire and power outage, and as a result, the jail was closed to the public.  Exhibit A ¶¶ 29, 30; *see* ¶ 30 (noting the suspension of social and legal visits); ¶ 32 (asserting that Deirdre Von Dornum of the Federal Defenders needed to obtain a court order to enter the closed facility).  On February 3, 2019, Plaintiffs joined individuals gathered outside of the MDC to protest allegations of the jail's conditions.  *Id.* at ¶¶ 3, 37, 38.  A group of protesters, "determined to get answers," entered and occupied the lobby of the MDC.  *Id.* at ¶ 40.  Officers deployed pepper spray to disperse the crowd and prevent further unlawful access to the facility.  Exhibit A ¶ 42.

## STANDARD OF REVIEW

### A.  Standard Under FRCP 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[1] The following factual recitation was culled from the allegations in the Complaint and is offered as a factual record only for the purposes of the motion to dismiss.

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

**B.  Standard Under FRCP 12(d) and 56**

Federal Rule of Civil Procedure 12(d) requires that a court treat a motion "as one for summary judgment under Rule 56" if the court considers "matters outside the pleadings" or the narrow category of other permissible materials on a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d). Thus, district courts have two options: "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988). "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a ... motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (Hurley, J.) (internal quotation marks and citations omitted); *see also Cleveland v. Caplaw Enters.*, 448 F.3d

3

518, 521 (2d Cir. 2006) ("A court may indeed convert a motion for judgment on the pleadings into a motion for summary judgment").[2]

Pursuant to Fed. R. Civ. P. 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). To dispute an asserted fact, the non-moving party must establish that there is a genuine dispute by citing to particular materials in the record or show that the materials cited by the moving party do not establish the absence of a genuine dispute or that the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The nonmoving party, however, may not rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted). Instead, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case … since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIM CONSTITUTES AN IMPROPER EXTENSIONS OF *BIVENS*

A plaintiff alleging a federal constitutional violation is not "automatic[ally] entitle[d]" to a *Bivens* remedy, *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008), and, in fact, the Supreme Court has cautioned that authorizing a *Bivens* remedy is a "disfavored judicial activity."

---

[2] In accordance with Local Rule 56.1, Defendants provide a statement of undisputed facts herein.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).  Indeed, *Bivens* is the byproduct of an "*ancien regime*," and since 1980 "the [Supreme] Court has refused to" "extend *Bivens* to any new context or new category of defendants."  *Id.*, at 1855, 1857.

The Supreme Court has only authorized a *Bivens* remedy in three specific instances and "and lower courts must scrutinize attempts to expand the Bivens remedy, even where courts had assumed the availability of such a remedy."  *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 57 (E.D.N.Y. 2017); *see Sanford v. Bruno*, 17-cv-5132, 2018 U.S. Dist. LEXIS 80897, at *11 (E.D.N.Y. May 14, 2018) (Cogan, J.) ("Practically speaking, … post-*Ziglar*, even where a Court of Appeals had previously found a *Bivens* remedy, that court or a district court must reconsider whether one is available.").  In *Bivens*, the Supreme Court recognized a damages remedy against federal agents for entering the home of a U.S. citizen and arresting him without having obtained a warrant and without having had probable cause to do so.  *Bivens*, 403 U.S. at 389, 391, 395-97; *see Abbasi*, 137 S. Ct. at 1860.  The two other instances in which the Supreme Court has recognized a *Bivens* remedy involved a female secretary's employment discrimination claim alleging that her Fifth Amendment rights were violated when a Congressman fired her, and an Eighth Amendment violation by prison officials when they failed to treat an inmate's asthma.  *Wilkie v. Robbins*, 551 U.S. 537, 549-50 (2007) (citing *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980)); *see Abbasi*, 137 S. Ct. at 1859.

The Supreme Court has held that a court should not recognize a *Bivens* remedy in a new context if there is either (1) an alternative, existing process for protecting the constitutional right asserted or (2) special factors counseling hesitation before authorizing such a remedy in the absence of Congressional action. *Abbasi*, 137 S. Ct. at 1857-60.  This practice of judicial restraint flows from a recognition that "'it is a significant step under separation-of-powers

principles for a court to determine that it has the authority,' in effect, 'to create and enforce a cause of action for [money] damages against federal officials,'" and "it is possible that the analysis in the [Supreme] Court's three *Bivens* cases might have been different if they were decided today." *Doe v. Hagenback*, 870 F.3d 36, 43 (2d Cir. 2017) (quoting *Abbasi*, 137 S. Ct. at 1856).

### A.  Plaintiffs' Claim Presents A New Context

In *Abbasi*, the Supreme Court announced the proper test for determining whether a case presents a new *Bivens* context.  137 S. Ct. at 1859.  Courts must compare the context of the case at issue with the three prior Supreme Court (and not prior Court of Appeal or District Court) decisions recognizing a *Bivens* remedy.  *Id.*; *accord Gonzalez v. Velez*, 864 F.3d 45, 52-53 (1st Cir. 2017); *Gonzalez*, 269 F. Supp. 3d at 58.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1860; *see Hernandez v. Mesa*, 589 U.S. _, 140 S. Ct. 735, 743 (2020) (noting the first of the two-step inquiry asks whether the claim "arises in a 'new context' or involves a 'new category of defendants'").  The Supreme Court further explained that, given its "expressed caution about extending the *Bivens* remedy, the new-context inquiry is easily satisfied" and even "small" differences between a case and a prior Supreme Court case recognizing a *Bivens* remedy are sufficient to create a new context.  *Id.* at 1865; *see Hernandez*, 140 S. Ct. at 743 ("[O]ur understanding of a 'new context' is broad.")

This case presents a new context because the Supreme Court has never implied a *Bivens* remedy for a Fourth Amendment claim that correction officers used excessive force by pepper-spraying civilian protesters inside of a jail.   In *Bivens*, federal agents entered the plaintiff's apartment, arrested him in front of his family, and searched the entirety of his apartment, all without a warrant.   *See* 403 U.S. at 389;[3] *see also Abbasi*, 137 S. Ct. at 1860 (narrowly describing *Bivens* as a claim against FBI agents for handcuffing a man in his own home without a warrant).

By contrast, this case involves different conduct in a different location (a jail, not a home) by different officers (correctional officers) from a different agency (the Federal Bureau of Prisons ("BOP")), operating under very different circumstances (protesters conducting an unauthorized breach of the prison lobby, whereas in Bivens the law enforcement agents arguably were conducting the unauthorized breach).   *See Oliva v. Nivar*, 973 F.3d 438, 443 (5th Cir. 2020) (finding a new context where the case involved "different conduct by different officers from a different agency"); *Edwards v. Gizzi*, 20-CV-7371 (KMK), 2022 U.S. Dist. LEXIS 20100, at *15-16 (S.D.N.Y. Feb. 2, 2022) (finding a new context because "the officers involved in *Bivens* were federal narcotics agents, … whereas here, the officers include U.S. Marshals and other court security officers").[4]   Notably, the Supreme Court's first example of a potential meaningful difference was "the rank" of the officers involved.   *See Abbasi*, 137 S. Ct. at 1860 (identifying "rank" of the officers involved as a meaningful difference).   The new category of defendants in

---

[3] Defendants do not address *Davis* because Plaintiffs' claim is extraordinarily different from a Fifth Amendment employment discrimination claim.

[4] *See also Style v. Mackey*, No. 17-CV-1691, 2020 U.S. Dist. LEXIS 101989, at *10 (E.D.N.Y. June 8, 2020) (Vitaliano, J.) (noting the case was meaningfully different because it involved the U.S. Marshals, not narcotics agents); *Martinez v. D'Agata*, No. 16-CV-44, 2019 U.S. Dist. LEXIS 218107, at *17-18 (S.D.N.Y. Dec. 16, 2019) (noting type of officers involved, members of a federal task force, differed meaningfully from the narcotics officers in *Bivens*).

this case is not a difference of rank, but a completely different type of officer, correctional officers, as opposed to FBI or DEA agents, which, under the Supreme Court's analysis, in and of itself constitutes a meaningful difference.

The new context analysis could end there, but this case also presents other meaningful differences.  The Supreme Court in *Bivens* reasoned that the right at issue was primarily a Fourth Amendment right to privacy, *Bivens*, 403 U.S. at 389, whereas here the Fourth Amendment right Plaintiffs assert is the right to be free from excessive force.  *See Abbasi*, 137 S. Ct. at 1860 (listing "constitutional right at issue" as a meaningful difference).[5]  Courts in the Second Circuit have held that even though the claims arise under the same Amendment, the constitutional right at issue – the right to be free from excessive force – is meaningfully different from the privacy right at issue in *Bivens*.  *See, e.g., Style*, 2020 U.S. Dist. LEXIS 101989, at \*9; *Sosa v. Bustos*, 17 Civ. 417 (ER), 2020 U.S. Dist. LEXIS 71362, at \*11-12 (S.D.N.Y. Apr. 22, 2020); *Martinez*, 2019 U.S. Dist. LEXIS 218107, at \*18; *see also Rivera v. Samilo*, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019) (Irizarry, J.) (holding that an excessive force claim is sufficiently different from Fourth Amendment privacy rights arising from a home search).

The allegations themselves present yet another meaningful difference.  *Bivens* involved a warrantless entry into a home where the narcotics agents allegedly searched the home, made arrests, and conducted strip-searches in front of other family members.  *See generally Bivens*, 403 U.S. 388.  Here, the allegations of excessive force did not occur during a search and seizure and did not occur in an individual's home, which is subject to special protection under the Fourth Amendment.  Rather, the conduct at issue occurred on government property, which at the time

_____

[5] Although Plaintiffs' claim invokes the same Amendment as *Bivens*, the Supreme Court has stated that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. _, 140 S. Ct. at 743.

was closed to the public because it occurred only days after a power outage emergency. Further, as noted above, unlike *Bivens* where the law enforcement agents had breached the plaintiff's home, here the protester Plaintiffs had breached the prison that was closed to the public.

In addition, correctional officers are tasked with the care and custody of inmates, and they operate under a different statutory mandate than investigatory and enforcement officers, especially when it comes to prison safety and security in response to a breach of the jail by unauthorized protesters. *See Abbasi*, 137 S. Ct. at 1860 (noting that "the statutory or other legal mandate under which the officer was operating" is a meaningful difference). The FBI's mandate is set forth in Title 28 of the United States Code, Section 533, which authorizes the Attorney General to "appoint officials to detect and prosecute crimes against the United States." To the contrary, BOP correctional officers have law enforcement powers limited to federal correctional facilities and only are permitted to make arrests in very limited circumstances. *See* 18 U.S.C. § 3050 (limited arrest situations to certain situations on prison grounds and escapes and attempted escapes).

Moreover, the lack of judicial clarity on the claims presented in this action further establishes that Plaintiffs are seeking to pursue claims arising in a new context. *See Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) ("'Judicial guidance' differs across the various kinds of Fourth Amendment violations—like seizures by deadly force, searches by wiretap, *Terry* stops, executions of warrants, seizures without legal process ('false arrest'), seizures with wrongful legal process ('malicious prosecution'), etc."). Indeed, Congress has delegated to the Attorney General and BOP the management of federal prisons. *See* 18 U.S.C. §§ 3621, 4001(b), 4042(a). For that reason, the Judiciary has not intruded upon the Executive's security of jails and prisons. This presents yet another meaningful difference. *See Abbasi*, 137 S. Ct. at 1860 (noting

9

that "the risk of disruptive intrusion by the Judiciary into the functioning of other branches" is a meaningful difference).

While the differences between this case and *Bivens* are numerous, judges in this district and the Southern District of New York have found that excessive force claims present a new (impermissible) *Bivens* context even when the officers involved are law enforcement officers effectuating arrests outside of a correctional setting – situations that are much closer to the factual scenario in *Bivens* than the allegations of Plaintiffs in this case. *See, e.g., Edwards*, 2022 U.S. Dist. LEXIS 20100, at *15-16 (dismissing claim based on finding excessive force claim against Marshals and court security officers a new *Bivens* context); *Style*, 2020 U.S. Dist. LEXIS 101989, at *9-11 (dismissing claim based on finding 4th Amendment excessive force claim against Deputy Marshals a new *Bivens* context); *Sosa*, 2020 U.S. Dist. LEXIS 71362, at *12-13 (rejecting claim because 4th Amendment excessive force claim against DHS and DEA agents a new *Bivens* context); *Oliveras v. U.S. Dep't of Homeland Sec. Investigations Special Response Team Officer Robert Basile*, 440 F. Supp. 3d 365, 371-72 (S.D.N.Y. 2020) (same); *Rivera*, 370 F. Supp. 3d at 368-69 (same).

Finally, although the Supreme Court recognized claims against correctional officials in *Carlson*, the claim there was one of deliberate indifference in treating an inmate's asthma, resulting in that inmate's death, whereas here, Plaintiffs are not inmates and the claim is that they were subjected to the use of excessive force after protesters made their way inside a jail that was closed to the public.  Indeed, under controlling Supreme Court precedent, courts in this Circuit have refused to extend *Bivens* to encompass excessive force claims brought by inmates against correctional staff, let alone ones brought by non-inmates under the Fourth Amendment.  *See Wiley v. Fernandez*, 9:19-CV-652, 2021 U.S. Dist. LEXIS 226803, at *17-18 (N.D.N.Y. 2021)

10

(finding 8th Amendment excessive force claim a new *Bivens* context because it is meaningfully different from the indifference to medical needs in *Carlson*); *Oneil v. Rodriguez*, 18-CV-3287 (AMD)(LB), 2020 U.S. Dist. LEXIS 181275, at *7-8 (E.D.N.Y. Sept. 30, 2020) (same) (citing *Ojo v. United States*, 16CV4112 (MKB)(LB), 2019 U.S. Dist. LEXIS 139302, at *38-39 (E.D.N.Y. Aug. 15, 2019)); *Akande v. Phillips*, 1:17-CV-01243 EAW, 2019 U.S. Dist. LEXIS 108772, at *9, *12 (W.D.N.Y. Jun. 29, 2019) ("Since no Supreme Court decision has ever extended *Bivens* to encompass the specific context presented by Plaintiff's excessive force claims [*i.e.* an alleged beating while naked], this cause of action presents a new *Bivens* context."); *Ramirez v. Tatum*, 17 Civ. 7801 (LGS), 2018 U.S. Dist. LEXIS 214034, at *15 (S.D.N.Y. Dec. 19, 2018) (holding "there is no *Bivens* remedy for … excessive force claims"); *Abdoulaye v. Cimaglia*, No. 15-CV-4921 (PKC), 2018 U.S. Dist. LEXIS 56167, at *16-17 (S.D.N.Y. Mar. 30, 2018) (noting that a Fifth Amendment excessive force claim presented new *Bivens* context); *Morgan v. Shivers*, No. 14-CV-7921 (?GHW), 2018 U.S. Dist. LEXIS 14235, at *15-16 (S.D.N.Y. Jan. 29, 2018) (same).

Given the Supreme Court's recent pronouncements that *Bivens* is a disfavored judicial remedy and that "even a modest extension is still an extension," *Abbasi*, 137 S. Ct. at 1864, the aforementioned differences between Plaintiffs' claim and the three prior Supreme Court decisions "easily satisf[y]" the new-context inquiry, and this Court should reject Plaintiffs' efforts to further extend *Bivens* remedies to these novel circumstances. *Id.* at 1865.

**B.  Special Factors Counsel Against Extending *Bivens* And The FTCA Is An Alternative, Existing Potential Means of Relief**

When a case, such as this one, present new contexts, a *Bivens* remedy will not be implied if (1) there is an alternative, existing process for protecting the constitutional right asserted or (2) there are special factors counseling hesitation before authorizing the remedy in the absence of

11

Congressional action. *Abbasi*, 137 S. Ct. at 1857-60; *Wilkie*, 551 U.S. at 550. A special factor is one that "cause[s] a court to hesitate" before answering in the affirmative "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1858. "The threshold for concluding that a factor counsels hesitation 'is remarkably low .... Hesitation is a pause, not a full stop.'" *Ojo v. United States*, 364 F. Supp. 3d 163, 175 (E.D.N.Y. 2019) (quoting *Turkmen v. Ashcroft*, No. 02 Civ. 2307, 2018 U.S. Dist. LEXIS 137492, at *31 (E.D.N.Y. Aug. 13, 2018) (Report and Recommendation) (Gold, M.J.)).

Here, there is both an alternative, existing process for protecting the constitutional right asserted and special factors counseling hesitation before authorizing a remedy in the absence of Congressional action.

Specifically, the FTCA is an alternative existing process or, alternatively, a special factor, which counsels against extending *Bivens* to this case, because Plaintiffs could have brought a tort claim under the FTCA to redress their allegations of excessive force. Indeed, the large majority of courts in this district and the Southern District considering this issue have come to the same conclusion. *See, e.g.*, *Edwards*, 2022 U.S. Dist. LEXIS 20100, at *18-22 (collecting numerous cases and explaining that the majority of decisions finding the FTCA as an alternative existing process "is further bolstered by the Supreme Court's more recent language in *Hernandez* when it addressed the Westfall Act and how it "ma[de] the FTCA 'the exclusive remedy for most claims against Government employees arising out of their official conduct,'" and "simply left *Bivens* where it found it."); *Scott v. Quay*, 19-CV-1075, 2020 U.S. Dist. LEXIS 216990, at *24-27 (E.D.N.Y. Nov. 16, 2020) (Report and Recommendation) (Gold, M.J.) (finding "the FTCA as a potential remedy [that] counsels hesitation in extending a *Bivens* remedy" and collecting cases

12

including *Style* and *Rivera*, *supra*);[6] *Oliveras*, 440 F. Supp. 3d at 373-75 (finding the FTCA an alternative remedy because, among other reasons, the Supreme Court's "more recent language in [*Abbasi*]" where the Court "set a far broader standard, requiring only Congress's creation of 'any alternative, existing process for protecting the injured party's interest,'" "fatally undermines *Carlson*'s finding that the FTCA is not an adequate alternative remedy …'"); *Ramirez*, 2018 U.S. Dist. LEXIS 214034, at *15 (finding the availability of alternative relief through the FTCA a special factor counseling against a *Bivens* remedy with respect to plaintiff's excessive force claims); *Turkman*, 2018 U.S. Dist. LEXIS 137492, at *36 ("Because plaintiffs could have brought their claims under the FTCA and been awarded damages for their injuries if they prevailed, [*Abbasi*] counsels that their *Bivens* claims should be dismissed."). *Abdoulaye*, 2018 U.S. Dist. LEXIS 56167, at *18-19 ("Although the *Carlson* court acknowledged the availability of an FTCA remedy before allowing that action to proceed, ... the [*Abassi*] court noted that *Carlson*, like the other previously approved *Bivens* actions, 'might have been different if [it] were decided today,'... The Court thus concludes that the existence of the FTCA as a potential remedy counsels hesitation in extending a *Bivens* remedy to Abdoulaye's claims."); *Morgan*, 2018 U.S. Dist. LEXIS 14235, at *16-17 (Despite the Supreme Court's view of the FTCA as a parallel remedy in *Carlson*, *Abbasi* "indicates that hesitation is nevertheless appropriate today[,]" and "the existence of the [FTCA's] alternative remedial structure is ... a factor counseling hesitation" in extending *Bivens*.).[7]

---

[6] *See Style*, 2020 U.S. Dist. LEXIS 101989, at *11-12 (finding FTCA an available, alternative remedy); *Rivera*, 370 F. Supp. 3d at 369 ("Plaintiff had an available tort remedy under the FTCA, which provides congressional consent for certain tort claims brought against the United States, including certain claims about abusive federal law enforcement officers").

[7] *See also Oliva*, 973 F.3d at 444 (finding the FTCA is an adequate alternative remedy).

Because the FTCA is an alternative, existing avenue for Plaintiffs to seek a remedy, there should be no avenue for *Bivens* relief here in that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Turkman*, 2018 U.S. Dist. LEXIS 137492, at *32 (citing *Abbasi*, 137 S. Ct. at 1858, 1865). This alone should end the analysis and thus, Plaintiffs' claim should be dismissed as a matter of law.

However, assuming arguendo that Plaintiffs' claim survives this analysis, their *Bivens* claim still should be dismissed because there are additional special factors that reach the remarkably low hesitation threshold. In conducting the special factors analysis, "central to [this] analysis" are "separation-of-powers" principles. *Oliva*, 973 F.3d at 444; *see also Hernandez*, 140 S. Ct. at 743; *Abbasi*, 137 S. Ct. at 1862 (separation of powers is itself a special factor). In enacting the FTCA, Congress created a statutory scheme for torts committed by federal officers. *See* 28 U.S.C. § 2680(h); *Abbasi*, 137 S. Ct. at 1858 (noting "that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action"). "The FTCA expressly allows for intentional tort claims, including assault and battery, that are based on the conduct of 'investigative or law enforcement officers' (the 'law enforcement proviso')." *Leytman v. United States Dep't of Homeland Sec. Transp. Sec. Admin.*, 804 F. App'x 78, 80 (2d Cir. 2020) (citing 28 U.S.C. § 2680(h)). Congress included the "investigative and law enforcement officers" proviso to remedy abuses by those officers. *See* S. Rep. No. 588, 93d Cong., 2d Sess. 3 (1973), reprinted in 1974 U.S. Code Cong. & Admin. News 2789, 2792 (1974); *Orsay v. U.S. Dept. of Justice*, 289 F.3d 1125, 1135 (9th Cir. 2002); *see also Millbrook v. United States*, 569 U.S. 50, 54 (2013) ("the FTCA waives the United States sovereign immunity for certain intentional torts committed by law enforcement officers"); *Rivera*, 370 F. Supp. 3d at 369 (noting that the FTCA "provides congressional consent for certain tort claims brought against the United States,

14

including certain claims about abusive federal law enforcement officers").  Congress' action in drafting the law enforcement proviso to allow tort claims against the Government for a law enforcement officer's alleged use of excessive force counsels hesitation before authorizing a new judicially-created avenue for a remedy arising out of the same conduct.[8]

Congressional inaction also invokes separation of powers principles.  It is noteworthy that in the over half a century since Bivens was decided, Congress never has created a statutory *Bivens*-type remedy for excessive force claims against individual officers.  "This 'silence of Congress is relevant' to the special-factors inquiry."  *Oliva*, 973 F.3d at 444 (citing *Abbasi*, 137 S. Ct. at 1862).  "Because Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts, its 'failure to provide a damages remedy' here suggests 'more than mere oversight.'"  *Cantú*, 933 F.3d at 423 (citing *Abbasi*, 137 S. Ct. at 1857, 1862); *see Dotson v. Griesa*, 398 F.3d 156, 167 (2d Cir. 2005) ("[T]he concept of special factors counseling hesitation in the absence of affirmative action by Congress has proved to include an appropriate judicial deference to indications that congressional inaction ... has not been inadvertent.").  Congress' inaction in not drafting a law that specifically permits excessive force claims against individual officers similarly counsels hesitation before authorizing a judicially-created remedy.  *See Edwards*, 2022 U.S. Dist. LEXIS 20100, at *22-23 (finding separation of powers to be a special factor because "Congress did not make individual officers statutorily liable for excessive-force claims and [t]his 'silence of Congress is relevant' to the special-factors inquiry"); *Oliveras*, 440 F. Supp. 3d at 374 ("Congressional inaction or limited action may be as indicative of its intent as the creation of a remedy that would satisfy a particular plaintiff" and

---

[8] Even if the federal law enforcement officer were acting outside the scope of his or her employment, and thus outside of the reach of the FTCA, plaintiffs would nevertheless have an alternative remedy under state law.  *See, e.g., Style*, 2020 U.S. Dist. LEXIS 101989, at *11; *Rivera*, 370 F. Supp. 3d at 370.

given Congress's decision to not provide any express remedy against the individual Defendants, the Court finds that both [*Abbasi*] and *Dotson* require the Court to defer to Congress's (in)action.").

In addition, separation-of-powers principles inherent in Congress' delegation of the control and management of federal prisons to the Executive should further cause the Court to hesitate before implying a *Bivens* remedy. Congress has delegated to the Attorney General and BOP the management of federal prisons. *See* 18 U.S.C. §§ 3621, 4001(b), 4042(a). "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-86 (1987).

Here, Plaintiffs' claim plainly challenges the security and management of the MDC, including its use of resources to keep protesters from storming the closed facility, which is within the purview of the Executive. A quintessential aspect of prison administration is controlling the entry and exit of outside persons and the circumstances under which they are permitted to enter. It is undisputed here that any alleged force was a response to an unauthorized entry of protesters that impacted the safety and security of the prison, and thus, "involves separation of powers concerns [that] counsel a policy of judicial restraint." *Turner*, 482 U.S. at 85; *see Scott*, 2020 U.S. Dist. LEXIS 216990, at *19-20 (finding prison management a separation-of-powers concern counselling hesitation to extend *Bivens*).

Accordingly, there exists both an alternative, existing process for protecting the constitutional right asserted and special factors counseling hesitation against an implied remedy here. As a matter of law, *Bivens* should not be extended to allow Plaintiffs' claims against Defendants Garcia and Hines.

## POINT II

## TO THE EXTENT THAT THE COURT EXTENDS THE BIVENS REMEDY, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (citation omitted). "Although [the] law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* at 1153 (internal quotation marks and citation omitted).

"[C]learly established law" cannot be defined "at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), but "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552, (2017) (internal quotation marks omitted). The particularity requirement exists to give a reasonable officer "fair notice that [the complained-of] conduct [is] unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "[S]pecificity is especially important [because] [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks omitted).

An official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014).

"In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Kisela*, 138 S. Ct. at 1152.

The circumstances of this case cannot meet these criteria. The use of pepper spray to disperse individuals attempting to gain access to a closed correctional facility was not clearly established as excessive force in this Circuit in February 2019. The Government is unaware of any Supreme Court or Second Circuit authority that would provide a reasonable officer with fair notice that such conduct is unlawful. While the Government recognizes that the Second Circuit, in *Tracy v. Freshwater*, established that an officer's use of pepper spray against an individual who was handcuffed and thus posed no threat to the safety of officers or others violated the Fourth Amendment, that was not the situation the officers confronted here. 623 F.3d 90, 98-99 & n.5 (2d Cir. 2010); *see also Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020) (noting that in April 2015, it was clearly established that it is a Fourth Amendment violation for an officer to use significant force against a subdued arrestee). Plaintiffs do not allege they were permitted to occupy the lobby of the MDC for protesting purposes nor do they allege that their decision to storm the lobby was not a threat to prison security. Rather, they only challenge the officers' response to the threat they created and presented to prison security. Considering the totality of facts in this circumstance, at the time of the events at issue in 2019, namely, protesters storming a correctional facility that was closed to the general public and attempting to breach the lobby, there was no binding precedent conclusively establishing that law enforcement's use of pepper spray and minimal force to disperse the protesters, clear the lobby and maintain facility security was unconstitutional.

When, as here, there is no existing precedent squarely covering the facts and it is not "definite that any reasonable [law enforcement officer] in the defendant's shoes would have

18

understood that he was violating [a clearly established right]," qualified immunity should be granted. *Plumhoff*, 572 U.S. at 778-79.[9]

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that this Court dismiss this action in its entirety and with prejudice, together and with such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
      February 11, 2022

                              BREON PEACE
                              United States Attorney
                              Eastern District of New York
                              *Attorney for Defendants*

           By:              /s/
                            Matthew J. Modafferi
                            Assistant U.S. Attorney
                            271-A Cadman Plaza East, 7th Floor
                            Brooklyn, New York 11201
                            718-254-6229
                            Matthew.modafferi@usdoj.gov

cc:    Gregory P. Mouton, Esq. (By Electronic Mail and Federal Express)
       Law Office of Gregory P. Mouton, Jr., LLC
       *Attorneys for Plaintiffs*
       1441 Broadway, 6th Floor
       New York, New York 10018

---

[9] Should the Court find a *Bivens* remedy appropriate here, which Defendants assert that it should not, Defendants submit that qualified immunity can be decided as a matter of law on a motion to dismiss because the law was not clearly established. However, if necessary to decide qualified immunity, Defendants request that the Court convert this portion of the motion to summary judgment pursuant to Rule 12(d). *See Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 93-94 (S.D.N.Y. 2016) (converting motion to dismiss to summary judgment and considering video evidence); *see also Heicklen v. Toala*, No. 08-CV-2457 (JGK), 2010 U.S. Dist. LEXIS 14344, at *1-2 (S.D.N.Y. Feb. 18, 2010), *aff'd sub nom. Heicklen v. Kelly*, 409 F. App'x 457 (2d Cir. 2011) (same). The Court should exercise its discretion to do so because the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage [of the] litigation." *Wood v. Moss*, 134 S. Ct. 2056, 2065 n.4 (2014); *cf. Scott v. Harris*, 550 U.S. 372, 375-76 (2007) (relying on video evidence to decide a motion for qualified immunity). To that end, and in an abundance of caution, Defendants have submitted a Local Rule 56.1 Statement of Undisputed Facts.