UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YANDIELLE SMITH & TIFFANY MCKELVY,

                Plaintiffs,

-against-

E. GARCIA, J. HINES & JOHN/JANE DOE # 1-25,

                Defendants.

**MEMORANDUM & ORDER**
**21-CV-578 (NGG) (RJR)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Yandielle Smith and Tiffany McKelvy filed a complaint against Correctional Officers Eleazar Garcia, Robert Hines, and John/Jane Does #1-25 in their individual capacities. Plaintiffs assert that the officers used excessive force in violation of Plaintiffs' Fourth Amendment rights, and they seek relief under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Defendants move to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motion to dismiss is GRANTED.

## I. FACTS

### A. Factual History[1]

In late January 2019, a severe cold front, commonly referred to as the "polar vortex," moved through New York City. (Compl. (Dkt. 1) ¶ 28.) On January 27, 2019, in the wake of this storm, an electrical panel at the Metropolitan Detention Center (the "MDC") exploded and knocked out the power in the MDC's West

---

[1] The following factual history is taken from the allegations of Plaintiffs' Complaint and are assumed true for the purposes of this Memorandum and Order.

1

Building. (*Id.* ¶ 29.) Temperatures within cells in the West Building plunged, and inmates were put on lockdown for up to 23 hours a day. (*Id.* ¶ 30.) Soon after, inmates began reporting freezing conditions coupled with the denial of basic services like medical care. (*Id.*)

Upon reports of the conditions in the West Building, protests began to form outside of the MDC. (*Id.* ¶ 37.) On February 3, 2019, the Plaintiffs, two non-incarcerated individuals motivated by the social and racial justice implications of conditions reported at the MDC, participated in one such protest. (*Id.* ¶ 38.) This protest, like those that had preceded it, began outside the MDC. Eventually, however, protestors and media personnel entered the lobby of the facility seeking answers. (*Id.* ¶ 40.)

Plaintiffs allege that soon thereafter, corrections officers, including Defendants, also entered the lobby and began attacking the protestors. (*Id.* ¶ 41.) Plaintiffs allege that the protests remained completely peaceful and that no protestors attempted to enter any secure part of the building. (*Id.*) Despite this, Plaintiffs allege that the guards struck, pushed, shoved, and pepper-sprayed the Plaintiffs without warning. (*Id.* ¶ 41-42.)

Plaintiff Smith alleges that Defendants struck and pepper-sprayed her, causing injury to her right arm and shoulder as well as severe pain, distress, and difficulty breathing. (*Id.* ¶ 43.) Plaintiff McKelvy similarly alleges that she was thrown to the ground and pepper-sprayed, suffering injuries similar to Smith's, as well as multiple fractures to her right hand. (*Id.* ¶ 44.) Plaintiffs further allege that, following this action, Defendants neither offered medical assistance nor requested any help on Plaintiffs' behalf. (*Id.* ¶ 49.)

### B. Procedural History

Plaintiffs filed their *Bivens* Complaint with this court on February 3, 2021. Defendants' Motion to Dismiss the Complaint for failure

to state a claim pursuant to Rule 12(b)(6), (Dkt. 10) ("Mot."), was served on Plaintiffs on February 11, 2022 and filed alongside Plaintiff's Opposition, (Dkt. 11) ("Opp."), and Defendant's Reply, (Dkt. 12) ("Reply"), on April 4, 2022. Eight days earlier, on February 3, 2022, however, Plaintiffs had filed in this district a related complaint, bringing claims pursuant to the Federal Tort Claims Act (the "FTCA") against Defendants arising out of the same incident". *See Smith v. United States*, No. 22-CV-00640 (KAM) (SJB).

When the instant Motion to Dismiss was served on Plaintiffs, the two complaints were before different judges. On February 14, 2022, the two complaints were consolidated before Judge Garaufis. (*See* Feb. 14, 2022 Text Order.) Defendants have not, at this time, sought leave to amend their Motion to Dismiss to seek dismissal of Plaintiffs' FTCA claims. Instead, Defendants answered Plaintiffs' FTCA Complaint on April 11, 2022. (FTCA Answer (Dkt. 13).) Accordingly, this court now addresses Defendant's Motion to Dismiss solely as to the *Bivens* claims brought by Plaintiffs in their February 3, 2021 complaint.

The court notes that, in the alternative, Defendants' motion seeks Summary Judgment on Plaintiff's claims. (*See* Mot. at 1-4.) Defendants also filed a Rule 56.1 statement contemporaneously. (*See* 56.1 Statement (Dkt. 10-4).) This portion of the filing was premature. Thus, the court will not review the Summary Judgment filings and will address the Motion to Dismiss solely on the basis of the Complaint.

## II. STANDARD OF REVIEW

Defendants seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When the court reviews a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court accepts as true all allegations of facts made

by the plaintiffs and draws all reasonable inferences in the plaintiffs' favor. *See ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A court will dismiss a complaint for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]

## III. DISCUSSION

### A. *Bivens* Claims as Relief

#### 1. Legal Framework

In *Bivens*, the Supreme Court established a cause of action for constitutional violations by federal officials. 403 U.S. at 397. In that case, Federal Bureau of Narcotics ("FBN") officers had allegedly violated an individual's Fourth Amendment rights by entering his home without a warrant, aggressively searching the home and his person, and eventually arresting him. *Id.* at 391, 395-97. In the years immediately following *Bivens*, the Supreme Court expanded the remedy's application to two other contexts: (1) violation of a female government employee's Fifth Amendment Due Process rights through discriminatory firing, *Davis v. Passman*, 442 U.S. 228 (1979), and (2) violation of an inmate's Eighth Amendment rights by ignoring his urgent request for medical help, *Carlson v. Green*, 446 U.S. 14 (1980).

However, the Supreme Court has not extended the *Bivens* remedy since *Carlson*, rejecting its application on numerous occasions and labeling any further expansion of the remedy "disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). As a result, courts assessing *Bivens* claims must first determine whether a case presents a "new context or involves a new

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

4

category of defendants." *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020). If it does, the court must then determine whether there are alternative available remedies or "special factors that counsel hesitation about granting the extension;" only where there are no such special factors may a court extend the *Bivens* remedy. *Id.* The fundamental goal of this inquiry is to determine "whether there is any reason to think that Congress might be better equipped to create a damages remedy" than the courts are. *Boule v. Egbert*, 142 S. Ct. 1793, 1803 (2022). And, in the event that there is "a rational reason to think that the answer is 'Congress'— as it will be in most every case—no *Bivens* action may lie." *Id.*

   a. *New Context*

The Supreme Court has defined a case as arising in a new context if its facts or legal claims are "different in a meaningful way" from the facts or legal claims of *Bivens*, *Davis*, or *Carlson*. *Abbasi*, 137 S. Ct. at 1859. The Court has not "endeavor[ed] to create an exhaustive list of differences" that could make a context "new," but it has provided some specific examples, such as:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859-60.

The Court has made clear that the proper understanding of a "'new context' is broad," *Hernández*, 140 S. Ct. at 743, and "even a modest extension is still an extension." *Abbasi*, 137 S. Ct. at 1864. Indeed, the *Abbasi* inquiry has precluded the implication

5

of a *Bivens* remedy in in all three cases proposing use of the remedy to since come before the Supreme Court, as the Court held that each would have constituted a new context.

First, in *Abbasi*, the plaintiffs alleged a warden had allowed guards to abuse detainees. *Id.* at 1864-65. The Court found meaningful differences from the claims in *Carlson*, which were brought against prison guards for deliberate indifference toward an inmate's serious medical needs. *Id. Abbasi* determined that the case's reliance on the Fifth Amendment, rather than the Eighth,[3] and minor distinctions between the federal officials held liable in *Carlson* and the supervisory officials in *Abbasi*, together made clear that a *Bivens* remedy in *Abbasi* would "extend *Carlson* to a new context." *Id.* The Court also noted that the warden in *Abbasi* lacked the clear judicial guidance on what constituted violative behavior that was available to the prison guards in *Carlson*, *id.* at 1864, and that possible alternative remedies existed for the *Abbasi* plaintiffs. *Id.* at 1865. Although the Court admitted that each of these differences was small "in practical terms," they were sufficient to constitute a new context, and a special-factors analysis was therefore necessary. *Id.*

In *Hernández*, the Court considered Fourth and Fifth Amendment claims against a Border Patrol agent who shot a Mexican teenager on the Mexican side of the border. *Hernández*, 140 S. Ct at 743-44. The Court reasoned that "[a] claim may arise in a new context even if it is based on the same constitutional provision" as a previously recognized claim. *Id.* at 743. Indeed, despite both claims arising out of the Fourth and Fifth Amendments, the Court

---

[3] The District Court handling the case on remand interpreted the Supreme Court's ruling to mean that this factor alone created a new context for these claims. *See Turkmen v. Ashcroft*, No. 02-cv-02307, 2021 WL 4099495, at *4 (E.D.N.Y. Sep. 9, 2021) (noting that the Court had found *Abbasi* extended to a new context since the case "implicates a different constitutional right than that in *Carlson*." (citing *Abbasi*, 137 S. Ct. at 1864)).

found a "world of difference" between the allegedly unconstitutional arrest and search in *Bivens* or the alleged sex discrimination in *Davis*, and the *Hernández* "cross-border shooting claims." *Id.* at 744.

Most recently, the *Egbert* Court considered a case in which a Border Patrol agent used excessive force against a United States citizen on United States soil in violation of his Fourth Amendment rights. 142 S. Ct. at 1800-02. The Court did not engage in its own new-context inquiry, *id.* at 1804, instead adopting the Ninth Circuit's finding that providing a *Bivens* remedy would constitute an extension to a new context solely on the basis "that the Defendant is an agent of the border patrol rather than of the F.B.I. [sic]." *Boule v. Egbert*, 980 F.3d 1309, 1313 (9th Cir. 2020).

### 2. Available Alternative Remedies & Special Factors Counselling Hesitation

The Supreme Court has explained that "central to this analysis [of special factors counseling hesitation] are separation-of-powers principles." *Hernández*, 140 S. Ct. at 743. Issues involving a host of weighty considerations "should be committed to those who write the laws rather than those who interpret them." *Abbasi*, 137 S. Ct. at 1857. "[A]bsent congressional action or instruction," therefore, a court must ask if "the Judiciary is well suited . . . to consider and weigh the costs and benefits" of allowing an action and determine if there are any special factors "mak[ing] it less probable that Congress would want the Judiciary to entertain a damages suit in a given case." *Id.* at 1858. If any such factors exist, a court must refrain from extending the implied remedy from *Bivens*.

Since *Abbasi*, the Court has continued to provide color on this separation-of-powers analysis. In *Boule*, it held that the proper inquiry for determining whether special factors counsel hesitation in extending the *Bivens* remedy is not "whether a *Bivens* remedy is appropriate" but "whether there is *any* rational reason

(even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Boule*, 142 S. Ct. at 1805 (emphasis in original). The operative question is merely whether Congress or the Judiciary is "better suited to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1805. "[I]f there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate . . . or even if there is the *potential* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* (emphasis in original).

The existence of even one such special factor, then, is sufficient to preclude the availability of a *Bivens* remedy. While the Court has not "offered an exhaustive accounting of such situations," *id.* at 1803, it has named several, including "context[s] in which Congress has designed its regulatory authority in a guarded way," *Abbasi*, 137 S. Ct. at 1858 (citing contexts involving the military, federal land, and the public purse), contexts implicating questions of congressional or executive policy, *id.* at 1861 (finding that national security "is the prerogative of the Congress and President); *Hernández*, 140 S. Ct. at 744 (finding foreign policy outside the scope of judicial interference), and even "uncertainty" of the "systemwide consequences" of recognizing a *Bivens* action, *Boule*, 142 S. Ct. at 1803-04.

Additionally, the existence of an alternative remedy through which the plaintiffs can vindicate their rights counsels against extending a *Bivens* remedy to a new context. The Supreme Court in *Abbasi* intimated, and in *Boule* confirmed, that a court may not create a *Bivens* remedy "if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Boule*, 142 S. Ct. at 1804. An alternative remedial structure, "like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

What defines an "alternative remedial structure," however, is not entirely clear. In *Carlson,* when the Court was operating under the "*ancien* regime" that looked more favorably on implied causes of action, the Court found that *Bivens* could work in tandem with the FTCA. *See Carlson,* 446 U.S. at 19-23. At that time, the Court apparently saw the FTCA as a parallel rather than exclusive alternative remedy. *Id.* But in the years after deciding *Carlson,* the Court began to walk back its willingness to permit *Bivens* claims where alternative remedies are available. *See Schweiker v. Chilicky,* 487 U.S. 412, 429 (1988) (finding the existence of an elaborate administrative scheme for the denial of social security benefits precluded additional *Bivens* remedies); *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 74 (deeming the availability of state tort law remedies and administrative grievance programs sufficient to preclude *Bivens* remedies); *Hui v. Castaneda,* 559 U.S. 799, 806 (2010) (determining that 42 U.S.C. § 233(a) precludes *Bivens* remedies by making the FTCA the exclusive remedy for any injury caused by a Public Health Service officer or employee acting in the scope of their employment). The Court's recent decisions seem to imply that, although *Bivens* and *Carlson* remain good law within their exact contexts, the logic upholding those decisions—particularly with regard to potential alternative remedies—should not be invoked going forward. *Cohen v. United States,* No. 21-CV-10774 (LJL), 2022 WL 16925984 at *6 (S.D.N.Y. Nov. 14, 2022).

The *Abbasi* Court relied on potential alternative remedies as a factor counseling against extending a damages remedy. *Abbasi,* 137 S. Ct. 1843 (finding the PLRA, writ of habeas corpus, and injunctive relief to be potential alternative remedies that counselled against extending a damages remedy). *Boule* similarly found possible alternative remedies were a "special factor counseling hesitation" because the plaintiff filed both an FTCA claim with the Border Patrol and a separate grievance with Defendant's supervisors. *Id.* at 1802. Without ruling on the sufficiency of the

FTCA claim, the Court found the procedures for filing grievances with the Border Patrol—which allowed anyone to lodge a complaint, and in this case prompted a year-long internal investigation—to be an alternative remedial structure precluding a *Bivens* remedy. *Id.* at 1806. The Court also found that the alternative remedies available need not even be imbued with the full set of traditional judicial procedures to suffice, explaining that administrative remedies may be adequate even if they do not afford plaintiffs the "rights to participation or appeal." *Id.*

3. Application

a. *New Context*

Defendants assert that several factors militate toward a finding that this case would extend *Bivens* to a new context. These factors—location, rank of the officers, constitutional right at issue, statutory mandate, and judicial guidance on the claims presented—Defendants argue, establish that Plaintiffs' claims arise in a new context, distinct from the contexts presented in *Bivens* or *Carlson*. (Mot. at 6-11.). Plaintiffs attempt to mollify these distinctions by highlighting key commonalities between the instant case and *Bivens*, as both cases involved federal officers using excessive force against civilians. (Opp. at 9-13.). To this end, Plaintiffs also argue that the setting in which the violation occurred should not itself warrant a finding of a new context. (*Id.*).

This court is ultimately unpersuaded by Plaintiffs' attempts to squeeze this case into the *Bivens* context. Although both the present case and *Bivens* pertain to alleged violations of the Fourth Amendment by an officer's use of excessive force, the specific contexts of these two alleged constitutional violations are widely divergent, and the Supreme Court's bar for finding a new *Bivens* context is low.

In *Bivens*, FBN agents entered Mr. Bivens' home without a warrant before conducting a search and arrest. In the case at bar,

federal prison guards used excessive force in removing non-incarcerated protestors from prison grounds. While both cases concern potential violations of an individual's Fourth Amendment rights, the Supreme Court has made clear that a claim brought under the same constitutional provision as a previously successful *Bivens* claim may still be found to arise in a new context. *Hernández*, 140 S. Ct. at 743. Indeed, while the legal hook may be the same as in *Bivens*, the facts and circumstances giving rise to the claims are vastly different. For instance, in both *Hernández* and *Boule*, the Border Patrol officers were engaged in the same law enforcement capacity as the FBN officers in *Bivens*, but the claims still arose in a new context from those in *Bivens*. See *id.* at 743-44; *Boule*, 142 S. Ct. at 1804. Similarly, here, Defendants may have been acting as arresting officers, but they were not conducting a search and arrest in a private home. Rather, they were addressing protestors in a federal prison, making this factual context even more novel than those presented in *Boule* and *Hernández*. Additionally, the officers, as agents of the BOP, worked for a different agency and were acting under an entirely different statutory mandate, 18 U.S.C. § 3050. Therefore, these claims brought against Defendants arise in a new context from those brought in *Bivens*.[4]

---

[4] Plaintiffs, perhaps tellingly, do not attempt to align the facts in this case to those in *Carlson*. Although both cases involve misconduct by federal prison guards, the Plaintiffs were not inmates, and the constitutional violation in question therefore falls under the Fourth Amendment rather than the Eighth. *Abbasi*, 137 S. Ct. at 1864 ( "[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right."). A harm to public protestors also implicates different policy concerns than a harm to detained inmates. Additionally, there is ample caselaw defining how a federal prison officer may act towards an inmate, but far less on how those same officers should act toward peaceful protestors on prison grounds. *Id.* at 1864-65 (finding the judicial guidance available to the warden with respect to his supervisory duties was "less clear" than the standard

### b. *Factors Counseling Hesitation & Alternative Remedial Structures*

Having found that this case arises in a new context, this court must now determine whether there are special factors counselling hesitation against providing Plaintiffs with a *Bivens* remedy. Plaintiffs contend that the possible FTCA remedy should not alone counsel hesitation in recognizing a *Bivens* remedy. (Opp. at 14.) However, the mere existence of an FTCA remedy may be preclusive. Moreover, the specific facts of how Plaintiffs have invoked non-*Bivens* remedial avenues in the instant case weigh against permitting a new *Bivens* context to be created.

While the Supreme Court has not explicitly overturned *Carlson's* acceptance of the FTCA as a parallel (rather than exclusive) remedy, *see Boule*, 142 S. Ct. at 1822 n.7 (Sotomayor, J., concurring in the judgment in part and dissenting in part) ("This Court repeatedly has observed that the FTCA does not cover claims against Government employees for violations of the Constitution of the United States."), the Court has found administrative procedures almost identical to those required prior to filing an FTCA claim with a court to be a sufficient alternative remedy within the special-factors analysis.

The Court in *Boule* classified the filing of a grievance claim that did not allow for participation or judicial review as a sufficient alternative remedy. *Id.* at 1806-07. Before filing an FTCA claim

---

available to the officers who failed to provide medical treatment in *Carlson*). *Id.* at 1864. Similarly, here, the standard for alleging that prison guards used excessive force against protestors is "less clear." *Id.* at 1865.

Further, all of the Supreme Court's decisions addressing Bivens claims against federal prison officials since *Carlson* have found new contexts, even when the suits were brought by inmates or detainees. *See Malesko*, 534 U.S. 61; *Minneci v. Pollard*, 565 U.S. 118 (2012); *Abbasi*, 137 S. Ct. 1843. It is clear, then, that a claim alleging that prison guards used excessive force on peaceful protestors arises in a different context from *Carlson*. 446 U.S. at 16-18.

with this court, Plaintiffs first presented the claim to the BOP, as required by statute, and provided the agency with a chance to settle. *See* 28 U.S.C. § 2675(a). The BOP ultimately denied that administrative claim, but judicial review was and is available. The remedies available to the Plaintiffs thus surpass those deemed sufficient in *Boule*. The FTCA remedial structure, together with the administrative process exhausted by Plaintiffs prior to bringing the FTCA claim, are therefore likely enough to counsel hesitation. Moreover, an online complaint hotline was available through the Office of the Inspector General (the "OIG") for complaints about "waste, fraud, abuse, misconduct, or whistleblower retaliation within the Department of Justice" including the BOP. Dep't of Just. Off. Inspector Gen., Hotline, https://oig.justice.gov/hotline (last visited Dec. 21, 2022). Although the Plaintiffs did not make use of this alternative grievance procedure, its availability is meaningful.

Since *Boule*, most courts across the country have followed this line of reasoning, dismissing possible *Bivens* claims when an alternative internal grievance procedure was available. *See, e.g., Mejia v. Miller*, 53 F. 4th 501, 505-06 (9th Cir. 2022) (finding an ability to report misconduct through the Bureau of Land Management website to be an "alternative remed[y]" counselling hesitation). "[W]hether alternative remedies provide comparable relief to an analogous *Bivens* suit is irrelevant." *Style v. Mackey*, No. 17-CV-1691, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020) (citing *Minneci*, 565 U.S. 118 at 129). The available alternative remedial structures described above—though different from those provided through a *Bivens* remedy—counsel hesitation in providing a *Bivens* remedy absent congressional approval or instruction. For these reasons, this Court joins the majority of the courts in this district to have examined *Bivens* claims where FTCA remedies were also available in refraining from extending a *Bivens* remedy to this new context. *See, e.g., Johnson v. Santiago*, No. 20-CV-6345 (KAM) (LB), 2022 WL

13

3643591, at *4 (E.D.N.Y. Aug. 24, 2022); *Scott v. Quay*, No. 19-CV-1075 (MKB) (SMG), 2020 WL 8611292, at *7-9 (E.D.N.Y. Nov. 16, 2020), *R. & R. adopted by Mar. 22, 2021 Text Order*; *Style*, 2020 WL 3055319, at *4; *Rivera v. Samilo*, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019); *Turkman v. Ashcroft*, No. 02-CV-2307 (DLI) (SMG), 2018 WL 4026734, at *7 (E.D.N.Y. Aug. 13, 2018).

Assuming, *arguendo*, that the FTCA and administrative remedies discussed above do not preclude extending a *Bivens* remedy, the court notes that another special factor exists in the instant proceeding. Specifically, the long tradition of judicial deference to the legislative and executive branch's expertise in prison management also counsels in favor of hesitation. The Supreme Court has held that "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and *to maintain institutional security*." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (emphasis added). "A detention facility is a unique place fraught with serious security dangers." *Id.* at 559. *See also Turner v. Safley*, 482 U.S. 78, 84-85 (1987). ("Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.") These statements were made in cases dealing with the rights of inmates. But the Supreme Court's logic regarding prison facility security surely holds true in the context of prison officials confronting public individuals inside prison facilities. Judicial deference to legislative and executive authority over prison management must and does have commonsense boundaries. But the Supreme Court has clearly directed the lower

courts that when it comes to *Bivens, any factor* counseling hesitation is enough to preclude extending the remedy.

## IV. CONCLUSION

Judge Liman of the Southern District of New York recently noted that "the *Egbert* Court made clear that, effectively, [the special factors test] operates as a bar to a *Bivens* claim in all cases except, perhaps, those involving Fourth, Fifth, and Eighth Amendment claims factually indistinguishable from *Bivens, Passman*, or *Carlson*." *Cohen*, 2022 WL 16925984, at *6. The case before the court is factually distinguishable from all three. Even if this court adopts a less totalizing view of Supreme Court's holding in *Boule*, special factors counsel hesitation in this instance. The court is not left wanting for a rational reason that Congress may be better suited to determine the proper remedies for members of the public who may have been ill-treated by prison officials. Both (1) the availability of alternative remedies in the form of an administrative grievance process, a complaint hotline, and the FTCA; and (2) the Executive Branch's strong interest in regulating issues of prison management and security counsel against extending the *Bivens* remedy to the case at bar.

Thus, Defendants' Motion to Dismiss is hereby GRANTED.

SO ORDERED.

Dated:   Brooklyn, New York
         December 22, 2022

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

15